Thank you, Your Honors. My name is David Ness. I'm with the Federal Defenders of Montana as well, and I'm here representing Mr. LaShawn Johnson, who was convicted out of district court in Billings of firearms and cocaine offenses. I want to start, if I could, on the district court judge's guideline determination, in particular his quantity determination, because I think that that impacts the Apprendi issue. As I set out in my brief, I think that the district court erred in his quantity determination in a couple of ways. One, I think it's pretty clear that he double-counted the cocaine. Let me interrupt for just a second. We're going to have a resentencing. Yes, sir. Because the government concedes error on the double-counting of the gun count. Will that resentencing permit you to make your case about the amount of crack? Well, I think both from the government's perspective as well as Mr. Johnson's perspective, as I recall from the government's brief, I think that we both asked the court to decide this issue on at least the double-counting issue. It's brief. Excuse me? You're right about the quantity issue is brief. Right, right. And as I recall from the government's brief, they even kind of specifically asked this court to decide that issue so that when we go back, at least hopefully we have the record cleared up on that issue and hopefully to obviate any need for another appeal in the event that Well, let me ask you this. When it goes back, the new guidelines apply, right? Yes, sir. And so if everything else was the same and the new guidelines were applied when the original sentence occurred, what would be the range? If the court agreed with Mr. Johnson on the drug quantity issue, then his range would be, as I recall, I think it goes down No, not that. Just all things that were articulated by the judge. The 1.55. All right. Let's just say it's 1.55. And you had the new guidelines. What would the range be? It would be over the 20 years. If the double-counting issue was decided in our favor, it would go down to 188 to 235 months. That's going to be decided in your favor. That's if you decide in my favor. Then it would go down below the 20 years, which is what I'm trying to say would more than likely obviate the Apprendi issue. If the double-counting issue was not decided and it went back and the district court judge decided that issue against Mr. Johnson again, then the district court judge could sentence him over 20 years. And so conceivably the Apprendi issue would still be in play. How did the 1.55 issue get calculated? What the judge did, the judge, I mean, it's. I find it hard to trace into the 1.55 figure. Yeah. And quite honestly, I do, too, because if you look in the sentencing transcript, when the judge goes through the paragraphs of the pre-sentence report and you add all of that up, it comes up to almost double that, almost, as I recall, about 3 kilograms. But then what happened was I think that the probation officer determined that Mr. Johnson should be sentenced on the basis of the amount of drugs that was attributed to Heather Schutz. And so without really explaining what happened, the judge then sentenced him on the basis of, as I recall the transcript, I think just over 1.5 kilograms. And so kind of what the judge there did, quite with all due respect to the judge, doesn't make a whole lot of sense, the way he counted it and then goes back down. And if you notice in the judge's rationale, he's converting all of this stuff into marijuana, which I don't quite understand either, because it isn't necessary to treat it all as crack cocaine. The only time you have to get into that sort of quantification is if you're dealing with two different types of drugs or two different forms of cocaine. But I guess what I'm trying to say is that if the court would decide this double counting issue and we go back down, the recommended guideline range is going to be below 20 years. Now, assuming that the court follows the guideline range, there really wouldn't be any apprendee issue at that point. And so I'm asking the court to take a hard look at this, at the drug quantification and the double counting issue with respect to that issue and decide that. I think that the court should decide that in Mr. Johnson's favor. And if it does, then, as I say, we may not even have this apprendee issue. Well, it sounds, if I, did I hear you say you won't have the apprendee issue once you get the gun count out of there, the additional gun enhancement? No, no. We would still have, if we go back with everything taken out of the guidelines except for the gun, and even if we go back with the new guidelines, we would still potentially have the apprendee issue because the guidelines would, the guideline calculation would be above 20 years. Well, if the statutory maximum is 20, I assume on resentencing that district judge isn't going to go over the statutory. Well, and that's true, too, I guess. If the court decides the apprendee issue and gets into that and decides the apprendee issue in Mr. Johnson's favor, then we're capped at 20 years. So I guess the court can proceed either way. The 20-year cap which comes in only if you're under 1.5, is that right? No, the 20-year cap actually would come in, well, if the court decided the apprendee issue and therefore decided that the government had not proven crack cocaine and we're looking at under 500 grams of powder cocaine, then the 20-year cap applies. If there's any crack cocaine, at least any crack cocaine over 5 grams, you're looking at 5 to 40. Okay, so there's no apprendee issue if we look and say that there's plenty of evidence that there's that amount of crack. And if we accept the government's harmless error, because there's a lot failing to specify it in the indictment. That, yeah, if you decided that way with the apprendee issue, I guess there is an apprendee issue you would have decided against Mr. Johnson. Okay. How about the powder cocaine? And see, that's the problem here is because there was, admittedly, there was testimony from the lay witnesses anyway that this case involved crack, some crack. There was testimony from what I would characterize as the government's main witness that about 75% of the crack that she obtained from LaShawn Johnson was crack, 25% of it was powder. And so our position has been that when you calculate out, when the court calculated out the guidelines, it should have calculated the guidelines with respect to the crack cocaine and calculated out the guidelines with respect to the powder cocaine, doing that through the drug equivalency tables. If the judge did that, then his offense level would have been two points lower rather than coming out at 38, I think. He would have come down to 36. And now with the new guidelines. It would have come out to 1.1. As far as the actual quantities? Yeah. It would have. I think that if you say, you know, you're looking at 1.5 kilograms and you take off 25% of that, it's going to be roughly 400 grams. It's going to put it down to about 1.1 kilograms or 1.2 kilograms, somewhere in that neighborhood, which would make it fall two points in the base offense level. So I feel like this is about it. Are there any evidence to the contrary? I would say no. I don't the government I anticipate. 25% powder. I would say no, because most of, you know, this, like most drug cases, most of the quantities here was, you know, historical. It wasn't seized. And it obviously wasn't tested, at least to establish it was cracks. I mean, that I think both parties agree with. But most of it wasn't even seized. And so the quantities that were determined for Mr. Johnson was based upon witness testimony. How much did you bring up? How much did you have? And the witness who received this stuff, Heather Schutz, who was really the only person in position to know, testified that 25% of it was powder. And that's also borne out, I think, if you look through the pre-sentence report and you look at the paragraph of the pre-sentence report. For instance, paragraph 15 talks about powder cocaine. Paragraphs 20 and 21 talk about that. What page are you talking about? Well, paragraph 15 of the pre-sentence report, which would be on page 4. 4. Of the pre-sentence report. It's a 15. Paragraph 15, yes, sir. Okay. Where does it say that? It's about in the middle of the paragraph. It says the illegal drug distributed by Schutz included powder cocaine and cocaine base, also known as crack. Oh, powder cocaine. Okay. It doesn't give quantities. Okay. All right. In another example, I think if you look at paragraphs 36 and 37, and that's paragraph 36 talks about a trip in June of 2005 when Heather Schutz rented a car and brought 10 to 12 ounces of cocaine to Billings. But then paragraph 36, it does intended to transport 10 to 12 ounces of crack cocaine. But then paragraph 38, which is three days later, they talk about going to Heather Schutz's house and cooking the powder up into crack. And there's no indication that Mr. Johnson was around at that time. I think the clear implication is that she would have gotten powder on that trip and not crack. And she made it into crack on her own. So I guess just on that basis, I would just simply urge the court to take a look at the quantity determinations and decide that issue. And we will go back for re-sentencing. The other issue that I think that the court, I would ask the court to take a hard look at, is the 924C conviction. And, you know, these cases are admittedly very fact-specific. But they are also, both in the Ninth Circuit and other circuits, really pretty clear that you've got to look at the particular gun and see if this particular gun is The government submitted information at trial indicating that Mr. Johnson had made some threats to some other people. Those people never testified that he had a gun when the threats were made. Heather Schutz, again, testified that he carried a gun, but he didn't use the gun in the drug trade at all. She said the only time she had a gun. What were the threats about? There was one woman, I think she testified he threatened to shoot up her house. And another woman he made a similar sort of threat to. About what? To shoot up her house. No, but why? Why? It had to do with the point of her testimony. She had paid her bill. Right. It was a drug bill. Wasn't that connected with the drug trade? Excuse me? Wasn't that connected with the drug trade? It was, but, I mean, those things happened like a year before. No. Well, because I guess the argument here is that he made a threat a year before, but that doesn't prove that the gun that he had a year later was connected to a drug offense. Certainly you could make a threat to do something to someone and have it totally unrelated to a gun possession that happened a year, year and a half later. And where was the gun found? The gun was found in a closet. Next to? Next to crack cocaine. Okay. Doesn't that give you an idea? Couldn't it give any factual idea? Well, I mean, I guess I would just say, you know, you look at cases like, you know, the Mann case and some of these other cases, and they're very clear that you can't just simply because a gun is possessed at the scene of a drug trafficking crime isn't enough. You know, or you go back, you know, these cases. Well, whatever they say, you could make reasonable inferences. That's what fact finders do. I suppose, Judge, but, again, I would just restate the argument that based upon Well, you're doing your best. I'm doing my best, yes, sir. Unless you have anything further, I'll Thank you very much. Good morning, Your Honors. I'm Ryan Archer on behalf of the United States. One reason I'm an attorney is because I don't count so well. And so when we get into a situation that we have here with counting up drug quantities You shouldn't say that, you know. I just hate to come before this court and be arguing drug quantities, numbers, who said what. A lot of it's based on historical evidence. Like my opposing counsel just indicated, we don't have drugs on the table here. We have co-conspirators testifying to what they remember. We have Heather Schutz testifying to what she believed a percentage may be. So as far as the drug quantity issue We know there was some powder. We do know there was some powder. What I think the important thing to remember with the drug quantity argument is that the trial did not introduce all evidence of all drugs that Heather Schutz ever sold. In fact, there are several places in the transcript where she admits being supplied by other individuals besides Mr. Johnson. So the trial didn't encompass her entire scope of business. So when she says 25% was powder cocaine, I don't think the court has to assume that that 25% is of the 1.55 kilograms. In fact, I think it's quite the opposite, that we have specific testimony in this case indicating there's certainly more than 1.5 kilograms. Of crack? Of crack. Specifically. In fact, I agree that the judge's order in the sentencing hearing is not a model of clarity. But I will refer you to excerpt of record, page 45, where he starts his order. And he says, I have computed what I feel the minimum amount that the defendant is responsible for, and that's in Heather Schutz's testimony. And then he goes on to specifically state paragraphs 58, 59, and 66. And he's looking at what the pre-sentence report. Pre-sentence report. Let me get that. Yeah. All right. So to boil this argument down as far as quantity, let's look at just paragraphs 58, 59, and 66. Paragraph 58. Let me get there. Okay. All right. 58. Paragraph 58 has 4 ounces of crack cocaine, and that's supported by the record testimony, the trial testimony in this case. That 4 ounces is. Paragraph 59 has 16 ounces in addition to 2 to 3 10-ounce loads. And if you go back to page 45 of the excerpts of record, Judge Sandstrom added an additional 20 ounces for that. So on paragraph 59. Go back where? To excerpt of record page 45 where Judge Sandstrom talks about paragraph 59. He says paragraph 59, 20 ounces of cocaine-based crack, and then the next sentence he says also in paragraph 59 is 16 ounces of cocaine-based crack. And, again, that crack is supported by the record testimony of Heather Schutz, where she testifies to those 20 ounces and an additional 16 ounces of crack. And then you go to paragraph 66. Well, it has 2 or 3 10-ounce loads, so he treated that as 20 ounces. He gave her the benefit of the doubt. Okay. And then if you go to paragraph 66, there's 2 to 3 6-ounce loads, and what Judge Sandstrom did there is he gave her the benefit of the doubt on the earlier one, so this time he adds another 18 ounces based on that paragraph. Paragraph 66? Paragraph 66 of the PSR. Because bringing 6 ounces of crack cocaine on three occasions. So he gave her the benefit of the doubt. Well, he gave her the benefit of the doubt on the previous time. Previous, but here he took 18. Here he took 18. 18. So if you add up just those three paragraphs, paragraph 58, 59, and 66, you get more than 1.5 kilograms of crack based on my calculations. So if we just stopped there, you're already over the 1.5 kilos, regardless of the fact that Judge Sandstrom then goes on to talk about the other confidential informants that indicated other amounts of crack that could possibly be calculated in the sentence. The fact is that if you take those three paragraphs alone, that's more than 1.5 kilograms of crack. That's supported in the record by specific testimony at trial that indicated that was crack. It wasn't powder. It wasn't part of this percentage that Heather Schutz testifies to. Just those three paragraphs gets you over the 1.5 kilograms. And I think it's important to remember that this is on a clearly erroneous standard. So I believe if you take those three paragraphs, it's certainly not clearly erroneous. In my brief, I provide record citations to trial testimony indicating there's over 1,800 grams of crack. And at the sentencing hearing, Agent VandenBosch testified that there was over 1.9 kilograms of crack. So if we just take a step back. Nobody really knows. Nobody really knows. And that's why it's a hard thing to come up and argue what was the exact amount. Well, nobody really knows. And for the defense in this case to say, well, you have to take 25 percent off 1.55 kilograms, that's not necessarily what's in front of the judge at the time. There's all sorts of numbers floating around in front of the judge. When he's trying to boil it down to how much do we know, I think these three paragraphs alone support his conclusion there's over 1.5 kilos and certainly indicates his ruling is not clearly erroneous. But who was it that testified as to powder cocaine? Heather Schutz testified that 25 percent of her business was powder cocaine. But, again, we don't have the whole scope of her business. Who knows over the course of the conspiracy how many kilograms she was actually dealing in. The government certainly does not purport to have the entire scope of her business in the record. So I think that this, although the government certainly has conceded in this case that resentencing is appropriate for the gun enhancement, I believe that this issue is ripe for the court because all of the evidence in front of the judge at the time supports his finding there's over 1.5 kilograms. With regard to the Prendi issue, I believe the court has to make a decision on that one way or another. Regardless of whether or not you find that the judge's order has misconstrued the amount of drugs, I think the court still has to decide the Prendi issue because, going back, as you see there's all sorts of numbers floating around. Agent Vandenbosch will presumably testify again that, based on his calculations, there's 1.9 kilograms of crack involved here. So the judge certainly could make the same finding and we could still have the same sentencing range above the 20-year maximum. Of course, if we accept your argument that there's sufficient evidence in the record to support 1.5 or more kilograms, the Prendi disappears, doesn't it? Or does it? I don't think it does, Your Honor. Basically, the government, with conceding that resentencing is appropriate here, the government's essentially given the defendant four points right out of the gate. That's the arms enhancement duplication. Exactly. And then when he goes back, he'll be sentenced under the new guidelines, which will give him an additional two points off, even if there's more than 1.5 kilograms of crack. To be honest with you, I haven't looked at what sentencing range that would be, but I believe that would still probably be a sentencing range above the 20-year maximum were it just cocaine. With regard to that, yes. What takes us over the 20 years? I believe the guideline range would still be in excess of 20 years, although I have not looked at the specific range. I guess what I'm trying to smoke out is just what is the appropriate issue? What do we have to decide on? Well, the government has conceded that this Court's opinion in Hollis decided after the sentencing in this case required the government to allege and prove to the jury that it was crack cocaine. Yes. And the government only alleged cocaine base in the indictment in this case. So the Apprendi issue is whether or not there was evidence that it was crack cocaine, allowing the sentencing range to be above 20 years. How come you didn't allege crack cocaine? It alleged cocaine base. Why not crack cocaine? The Hollis decision had not been decided at the time this case went to trial. In the normal practice at that time before Hollis was to allege cocaine base because that's how the statute reads. The Hollis decision says, well, cocaine base is basically the cookie dough, crack is the cookie. You have to actually prove that the cookie was involved there. At least that's how I try to analogize it. We didn't do that in this case because we didn't have the benefit of the Hollis decision. But as cited in our briefs, the Apprendi issue is really no issue at all because the judge can certainly stack the counts, the multiple counts of conviction, to get to whatever sentencing range may be there. In the case today, the sentencing range was 360 months. Well, certainly the district court judge could stack the multiple counts of conviction up to 80 years, and so there's simply no plain error on the Apprendi issue. Unless there are any questions on the additional issues, the first one being the 924C count and the last one being the supervisory role, I'll sit down. Thank you. Thank you. Just a couple of brief points. If you look through the presentence report and the quantities that were cited by the government in essentially paragraphs 57 through 66, what you'll note in the presentence report is that there's no reference at all to Heather Schuetz's testimony that half of the drugs that she got or 25 percent of the drugs she got were in powder form rather than crack form. Now, the way that your point characterizes it is 25 percent of her business was powder, and what I gather from your statement is that 25 percent of what she got from Johnson was powder. And that's my understanding is the latter characterization. I guess it's in the record somewhere. It's in her testimony. She was asked about that, and she ---- We have to look it up. Where is it? In her testimony. Shoot, I should have had that. The citation is in the brief. Okay. Well, we'll get it for you. It's in there, and I can look it up and give it to the court, but it's cited in the brief. Put it on one of our gum sheets. Okay. And I can do that. But in my memory of her testimony, she was very clear that about 25 percent of this was powder. But there's a lot of testimony about amounts that would take it up pretty high. You know, I disagree, and this is where the ---- what I believe to be the judge's double-counting error is, is that he's double-counting. Heather Shoots testified essentially to all the same transactions that, you know, Ms. Caldwell testified and some of these other drug couriers testified to. And what the judge did was he essentially took their testimony and took her testimony and added them together, even though they're the same thing. And there is no evidence, right, and there is no evidence that Mr. Johnson was involved with anyone else other than Heather Shoots. I mean, his, you know, the gist of this trial was she was getting crack cocaine from him and bringing it up to billings, and there was no evidence that he had any other customers on his own or anything of that nature. The government indicates that she may have been involved in some other things, and I think she was. But the testimony of her involvement with selling drugs happened before Mr. Johnson was even in the picture. There was some testimony about her having another boyfriend who went to prison, and she may have had some involvement with selling drugs with that person. But that was prior to her. Well, she might have kept some of his customers. Yeah, yeah, right, right. But I don't think that that would necessarily I don't think that would be attributed to Mr. Johnson as far as relevant conduct is concerned. And I guess along those lines, during the sentencing hearing, defense counsel was questioning the lead police officer about his drug quantification, and defense counsel asked, and do you recall that Heather Shoots testified that not all of this was cocaine-based? He said, I don't recall that question. Don't you think that's an important consideration? In attributing the amounts of cocaine-based to LaShawn Johnson, yeah, obviously it's important. But apparently that didn't enter into either the judge's calculations or the calculations in the pre-sentence report. Finally, if the court decides in our favor with respect to these drug quantities, I think that really this whole stacking issue is out of the picture, because, again, the guidelines, according to my calculations, would then fall below 20 years. And so that whole stacking argument that's under Chapter 5 of the sentencing guidelines wouldn't come into play. So unless there are any further questions. Thank you very much. Thank you. The matter is submitted, and I should state for the record that the fourth item on the calendar, United States v. Singh, is also submitted. Now we come to Canyon Ferry Road v. Stromberg. Thank you.
judges: Pregerson, Canby, Noonan